JUDGE DAVID BRIONES

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

FILED

2022 NOV 14  PM 12: 14

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | |
|---|---|
| MABEL ARREDONDO, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| PALMER ADMINISTRATIVE SERVICES, | § |
| INC., a New Jersey Corporation, | § |
| | § |
| Defendant. | § |
| | § |

# EP22CV0419

## PLAINTIFF'S ORIGINAL COMPLAINT

## PARTIES

1. Plaintiff MABEL ARREDONDO ("Plaintiff") is a natural person and is a citizen of the Western District of Texas and was present in Texas for all calls, in this case in El Paso County.

2. Defendant PALMER ADMINISTRATIVE SERVICES, INC ("Palmer") is a corporation organized and existing under the laws of New Jersey with principal address at 3430 Sunset Avenue, Ocean, NJ 07712. Palmer is a registered corporation in New Jersey and can be served via registered agent Corporation Service Company, Princeton South Corporate Center, Suite 160, 100 Charles Ewing, Ewing, NJ 08628.

## JURISDICTION AND VENUE

3. **Jurisdiction.** This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims*

*v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendant telemarketing robocalls to Plaintiff; adds little complexity to the case.

4. **Personal Jurisdiction**.  This Court has specific personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.  Defendant called Plaintiff in Texas and then took the affirmative step of mailing Plaintiff a vehicle service contract to her Texas mailing address.

5. **Venue.**  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when he received a substantial if not every single call from the Defendant that are the subject matter of this lawsuit.

6. This Court has venue over the defendant because the calls at issue were sent by or on behalf of the above-named defendant to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

7. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but

were also a threat to interstate commerce generally.  See S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8.  The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9.  The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).

12.  The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14.  The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17. The FCC confirmed this principle in 2013 when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the*

*Matter of the Joint Petition Filed by Dish Network, LLC,* 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. E.g., *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## The Texas Business and Commerce Code § 302.101

20. The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

21. The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

22. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or

remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302."

Tex. Bus. & Com. Code § 302.303.

## FACTUAL ALLEGATIONS

23. Plaintiff's personal cell phone number ending in 8219 has been registered on the National Do-Not-Call Registry since March 2022.

24. Plaintiff received multiple phone calls from an anonymous telemarketer at the direction of Defendant to her personal phone number ending in 8219 soliciting Plaintiff for a vehicle service contract (VSC).

25. Through information and belief, Defendant uses an anonymous telemarketing company to make phone calls on its behalf.

26. Plaintiff received calls from August 8, 2022, to September 16, 2022, solicitating Plaintiff for a VSC.

27. On August 8, 2022, Plaintiff received the first call from phone number (682)332-5559 to her personal phone ending in 8219. Plaintiff answered the phone was connected to a "James" from the "Vehicle Service Department." James then attempted to transfer Plaintiff to another agent, but the call dropped.

28. On August 26, 2022, Plaintiff received another call from phone number (972) 634-7566 to her personal phone ending in 8219.  Plaintiff answered the phone and was again connected "James" from the "Vehicle Service Department".  James transferred the call to the agent but again the called dropped.

29. On August 31, 2022, Plaintiff received a phone call from phone number 806-436-8246 and was connected to "James" from the "Vehicle Service Department".   The telemarketer verified the vehicle identification number for Plaintiff's vehicle then

transferred Plaintiff to "James" from the "Vehicle Processing Center." James verified Plaintiff's address and mileage of Plaintiff's vehicle and proceeded to solicit Plaintiff for a "car warranty" policy. Plaintiff purchased the policy to determine who was behind the calls.

30. On August 31, 2022, Plaintiff received 2 automated text messages from Defendant. The text messages included "Reply Stop to unsubscribe" indicating that the messages were sent using an ATDS.

31. Plaintiff received 2 additional phone calls on September 12, 2022, and another call on September 14, 2022, in which Plaintiff answered the calls, greeted by telemarketers who attempted to solicit Plaintiff for "car warranty" policies, however on those occasions, the calls were dropped when attempting to transfer to an agent.

32. On September 16, 2022, Plaintiff received a call from 254-309-1941 and was connected to telemarketer Heather who solicited Plaintiff for a vehicle service contract. Plaintiff again answered the qualifying questions and purchased the policy. Plaintiff received the policy that was mailed to her residence which revealed who was behind the calls and text messages.

33. On September16, 2022, Plaintiff received an automated text message. The text message included "Reply Stop to unsubscribe" indicating that the message was sent using an ATDS. "Reply Stop" is indicative of a message that was sent automatically and who's response will be received and process via an automated means.

34. The text message Plaintiff received in paragraph 33 did not address Plaintiff by name and instead was auto generated in response to a contract being sold and could have gone to anybody who purchased a contract from Defendant.

35. Defendant knowingly and willfully violate the TCPA because doing so benefits them financially when consumers purchase their vehicle service contracts.

36. Defendant Palmer Administrative Services, LLC, has previously sued for violating the TCPA on actions *Salaiz v. Palmer Administrative Services, LLC* et al., 3:22-CV-00017-FM, *Odle v. Palmer Administrative Services, LLC Inc., et al.* 3:21-CV-00623-AC, and several other actions because doing so benefits them financially.

37. Table A displays the unauthorized calls made by the Defendants:

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1 | 08/08/2022 | 1:37 PM | 682-332-5559 | 2 min 3 seconds |
| 2 | 08/26/2022 | 11:43 AM | 972-634-7566 | 26 seconds |
| 3 | 08/31/2022 | 12:25 PM | 806-436-8246 | Live call |
| 4 | 08/31/2022 | 12:29 PM | 888-214-4234 | Automated text message |
| 5 | 08/31/2022 | 2:59 PM | 888-214-2434 | Automated text message |
| 6 | 09/12/2022 | 11:01 AM | 325-255-8733 | 2 min |
| 7 | 09/12/2022 | 2:15 PM | 254-309-3358 | 1 min seconds |
| 8 | 09/14/2022 | 1:23 PM | 512-610-7113 | 1 min |
| 9 | 09/16/2022 | 12:24 PM | 254-309-1941 | 6 min |
| 10 | 09/16/2022 | 12:34 PM | 888-214-4234 | Text message |

38. Defendant and their agents and co-conspirators amassed lists of thousands of vehicle owners from public records, vehicle sales and registration records, and data aggregators and then sent phone calls *en masse* to market their VSCs.

39. Defendant participated in, facilitated, directed, authorized, knew of or willfully ignored the harassing telemarketer calls, while knowing facts that required a reasonable person to

investigate further, and approved, and ratified the conduct of their employees, agents, and
co-conspirators to engage in the false and misleading sales practices and unlawful
telemarketer calls.

40. On November 1, 2022, Plaintiff searched the Texas Secretary of State website
https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp and verified that Defendant
does not have a solicitation registration certificate on file with the Texas Secretary of
State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas
resident.

41. Defendant refuses to take any action to stop or curtail the unlawful sales practices and
robocalling because these practices benefit Defendant financially.

42. Plaintiff never consented to receive the calls alleged herein. Plaintiffs had no relationship
with Defendant prior to the calls alleged herein.

43. Each and every call was placed without the maintenance of an internal do-not-call policy.
Each and every call failed to identify the telemarketers and parties they were calling on
behalf of. Each and every call was placed without training their agents/employees on the
use of an internal do not policy.

44. On October 24, 2022, Plaintiff sent an internal do-not-call policy request to
info@palmeradministration.com which is the email listed on the VSC. Defendant never
sent Plaintiff a do-not-call policy.

45. On information and belief, Defendant did not have a written do-not-call policy while it
was sending Plaintiff the unsolicited phone calls.

46. On information and belief, Defendant did not train its agents who engaged in
telemarketing on the existence and use of any do-not-call list.

## VICARIOIUS LIABILITY

47. Defendant is vicariously liable under the theories of implied authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

48. "A[n] entity may be held vicariously liable for violations of the TCPA 'under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.'" Aranda v. Caribbean Cruise Line, Inc., 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016) (Quoting In re Joint Petition filed by Dish Network, LLC, 28 F.C.C. R. 6574, 6582 ¶ 28 (2013)). "Formal Agency" in this context means actual authority, which may be express or implied. Id,.

49. Defendant gave express authority and apparent authority to telemarketers with full knowledge the administration of sales and solicitation of sales of the car warranty policies marketed as a result of the contract would be marketed using an automatic telephone dialing system ("ATDS").

50. Defendant has ratified the conduct and behavior of the telemarketers by repeatedly signing contracts to hire them to administer sales and the solicitation of sales of their services with the full knowledge and expectation Defendant would violate the TCPA.

### Violations of the Texas Business and Commerce Code § 302.101

51. The actions of the defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

52. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

53. Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

54. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

55. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

56. Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

57. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

### Plaintiff's cell phone is a residential number

58. The calls were to Plaintiff's cellular phone (915) 999-8219 which is Plaintiff's personal cell phone that she uses for personal, family, and household use. Plaintiff maintains no landline phones at her residence and has not done so for at least 5 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has her cell phone registered in her personal name, pays the cell phone from her personal accounts, and the phone is not primarily used for any business purpose.

## I. FIRST CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

1.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

   a.    a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);

   b.    training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);  and,

   c.    in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).

3.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

4.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

5.    Plaintiff also seeks a permanent injunction prohibiting Defendant and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

## II. SECOND CLAIM FOR RELIEF:

**Violations of the TCPA "Sales/DNC" Prohibitions 47 C.F.R. § 64.1200(c)**

1.      Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

3.      Plaintiff was statutorily damaged at least ten (10) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500 per call.

4.      Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violation of 47 U.S.C. § 227(c)(3)(F).

### III. THIRD CLAIM FOR RELIEF:

**Violations of The Texas Business and Commerce Code 302.101**

1.      Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without her prior express written consent.

3.      Plaintiff is entitled to an award of up to $5,000 in damages for each violation of Texas Business and Commerce Code 302.101.  Texas Business and Commerce Code 302.302(a).

4.      Plaintiff is entitled to an award for all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorney's fees. Texas Business and Commerce Code 302.302(d).

## II.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff MABEL ARREDONDO prays for judgment against the defendant jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C.      An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for ten (10) calls.

E.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

F.      An award to Plaintiff of damages, as allowed by law under the TCPA;

G.      An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity;

H.      Such further relief as the Court deems necessary, just, and proper.

November 7, 2022,                          Respectfully submitted,

MABEL ARREDONDO
Plaintiff, Pro Se
9328 Lait Drive
El Paso, TX 79925
915-999-8219
Mabel.arredondo22@gmail.com

Plaintiff hereby demands a jury trial for all claims so triable.